# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00571-COA

**EARNEST H. JOHNSON**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

DATE OF JUDGMENT:                    04/15/2021
TRIAL JUDGE:                         HON. LILLIE BLACKMON SANDERS
COURT FROM WHICH APPEALED:           AMITE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF STATE PUBLIC DEFENDER
                                     BY: ZAKIA HELEN ANNYCE BUTLER
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: ALEXANDRA RODU ROSENBLATT
DISTRICT ATTORNEY:                   SHAMECA COLLINS
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED IN PART; REVERSED AND
                                     REMANDED IN PART - 09/20/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     An Amite County Circuit Court jury convicted Earnest Johnson of burglary of a dwelling (Count I) and automobile theft (Count II). Following the jury's verdict, the Amite County Circuit Court sentenced Johnson to twenty-five years for Count I and ten years for Count II, with both sentences to be served concurrently in the custody of the Mississippi Department of Corrections (MDOC). The circuit court also gave Johnson credit for time already served. On appeal, Johnson raises the following arguments: (1) the State presented insufficient evidence to support a conviction as to Count I for burglary of a dwelling; and (2)

jury instruction S-1 omitted an essential element as to Count II for automobile theft.

¶2.    Upon review, we find no reversible error as to Count I for burglary of a dwelling and affirm Johnson's conviction and sentence as to that charge. As to Count II, however, we find that the jury was never instructed regarding the value of the vehicle alleged as stolen. Because the vehicle's value is necessary to establish the applicable statutory sentencing range, we reverse Johnson's conviction and sentence as to Count II for automobile theft and remand for a new trial.

**FACTS**

¶3.    On October 16, 2019, the Amite County Sheriff's Office received a phone call from a neighbor of Dennis Coggins. Although Coggins had been arrested in June 2019 and was still incarcerated in the Amite County Jail, the neighbor noticed that Coggins's truck appeared to be missing from Coggins's driveway. In response to the neighbor's phone call, Investigator Dewayne Whetstone went to Coggins's residence. Investigator Whetstone found that the gate leading to Coggins's driveway had been left wide open, the lock had been cut off, and Coggins's truck was not on the property. Investigator Whetstone further found the doors to both Coggins's residence and shed open and the lock to the shed missing. Investigator Whetstone testified that it appeared as though someone had rummaged through both Coggins's home and shed. Investigator Daniel Meaux, also employed by the Amite County Sheriff's Office, photographed the interior and exterior of Coggins's home and shed.

¶4.    The investigators interviewed Coggins in jail and showed him photographs of the

interior and exterior of his home. Coggins testified that a barbed-wire fence enclosed his property on three sides and that there was a gate across the residence's driveway on the fourth side of the property. At the time of his arrest, Coggins had locked the front door of his home but had left the key in the lock. He stated that his shed had been padlocked at the time of his arrest and that the gate across his driveway also had been closed and locked. From the investigators' photographs, Coggins observed that someone had cut off the padlock on his shed door and had rummaged through the items inside his home. Coggins further testified that the lock on his gate appeared to be missing and that the gate had been left wide open.

¶5.     Also based on the investigators' photographs, Coggins determined that numerous items had been stolen from his home and shed. Along with other items, the missing personal property included TVs, about $8,500 in cash, his 2008 Chevrolet Silverado, two mini bikes, and a dirt bike. Coggins stated that he had been incarcerated with Johnson at the Amite County Jail and, upon learning that Johnson would be released before him, had asked if Johnson would go to his house and bring him "some bond money." Coggins testified that he knew Johnson had a job lined up after he got out of jail and had offered to sell Johnson his truck. According to Coggins, Johnson stated that "he wouldn't feel comfortable [going inside Coggins's house] without written permission, and that was the end of that conversation." Coggins testified that he and Johnson had no further discussions about his truck or retrieving the money from inside his house. Coggins also stated that he never told

3

Johnson how much money was inside his house or exactly where the money was located.

¶6.     Once they had confirmed that Coggins's 2008 Chevrolet Silverado was missing from his residence, the investigators marked the vehicle as stolen on the National Criminal Information Center's database. On December 3, 2019, the investigators received information that Coggins's truck had been observed being driven on Interstate 55. After alerting several law-enforcement agencies along the route to be on the lookout for the vehicle, the investigators learned that the truck had been stopped in Lincoln County. Johnson was the driver and sole occupant of the vehicle at the time of the traffic stop.

¶7.     Investigators Whetstone and Meaux drove to the scene and transported Johnson back to Amite County. Johnson waived his *Miranda* rights[1] and gave a statement to the investigators. Investigator Meaux stated that Johnson initially claimed to have permission to drive Coggins's truck. When the investigators disputed Johnson's claim, Johnson admitted that "he took [Coggins's] stuff and that he wanted to get back at Coggins." According to Investigator Whetstone, Johnson admitted that he had entered Coggins's home, taken cash from inside the home, and taken Coggins's truck. Investigator Meaux testified that Johnson had admitted to making three different trips to Coggins's home and taking property from the residence on each trip. Johnson provided the investigators with information about the location of several items stolen from Coggins's home and shed.

¶8.     Following the recovery of his truck, Coggins discovered that the vehicle had sustained

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

body damage. About thirty days after investigators returned the truck to him, Coggins sold the truck for $5,000. Coggins testified that in his opinion the Chevrolet Silverado had been worth at least $5,000 at the time it was stolen. Along with Coggins's truck, investigators recovered and returned to Coggins a mini-bike stolen from his shed and several TVs stolen from inside his home.

¶9.    After the State rested its case-in-chief, Johnson testified on his own behalf. Johnson stated that he and Coggins were not friends but that Coggins had learned Johnson was about to be released from jail and had asked Johnson to go to his (Coggins's) house and "get some money and come bond him out." Johnson testified that Coggins had indicated the money would be inside a pair of pants lying on the floor in the home. Johnson stated that after his release from jail, he went to Coggins's residence and retrieved the money. After taking "two more steps" into Coggins's home and observing some of the items inside Coggins's bedroom, however, Johnson claimed that he could not bring himself to return to the jail and give Coggins the money. Johnson stated that he did not have a vehicle of his own and that Coggins was going to allow him to use the truck "to bring his [(Coggins's)] money back." Then, according to Johnson, Coggins was going to allow Johnson to use the vehicle as a work truck in his (Johnson's) new business.

¶10.    Johnson testified that he could not clearly remember whether the gate to Coggins's property had been opened or closed when he arrived, but he stated that he "want[ed] to say open." He also stated that the door to Coggins's residence was open when he arrived and

5

that "[t]he place was already wrecked all the way to the bedroom." Johnson admitted that he never repaid the money he took from Coggins's residence. Even after his decision not to return to the jail and give Coggins his money, Johnson returned to Coggins's residence on two other occasions. With regard to the mini-bikes and dirt bike taken from Coggins's shed, Johnson testified that Coggins had asked him to retrieve those items and to keep them safe until Coggins's release from jail. As a result, Johnson stated that he did so and that he always intended to return the items to Coggins.

¶11. The jury convicted Johnson of both burglary of a dwelling and automobile theft. The circuit court gave Johnson credit for time already served and sentenced him to twenty-five years for burglary of a dwelling and ten years for automobile theft, with both sentences to be served concurrently in MDOC's custody. Johnson unsuccessfully moved for judgment notwithstanding the verdict or, alternatively, a new trial. Aggrieved, he appeals.

**DISCUSSION**

**I.     Sufficiency of the Evidence as to Count I**

¶12. Johnson contends that insufficient evidence supported his conviction for burglary of a dwelling and that the circuit court erred by denying his motion for JNOV as to Count I. Specifically, Johnson asserts that the State failed to prove beyond a reasonable doubt that he committed a "breaking" to gain entry to Coggins's residence. He therefore asks this Court to reverse his conviction as to Count I.

¶13. "A JNOV motion challenges the legal sufficiency of the evidence." *Briggs v. State*,

6

337 So. 3d 716, 720 (¶19) (Miss. Ct. App. 2022) (quoting *Valentine v. State*, 322 So. 3d 417, 422 (¶15) (Miss. 2021)). When reviewing challenges to the sufficiency of the evidence, the following standard applies:

> [W]e view all evidence, including all reasonable inferences, in the light most favorable to the State. We will affirm the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The issue on appeal is not whether the reviewing court would have found the defendant guilty; rather, the conviction must be affirmed if there was sufficient evidence for any rational trier of fact to have rendered a guilty verdict.

*Id.* (citations and internal quotation marks omitted).

¶14. Mississippi Code Annotated section 97-17-23(1) (Rev. 2020) defines burglary of a dwelling as "breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein . . . ." Thus, the essential elements of burglary of a dwelling are "(1) unlawful breaking and entering, and (2) intent to commit a crime therein." *Ward v. State*, 285 So. 3d 136, 140 (¶16) (Miss. 2019) (quoting *Jackson v. State*, 90 So. 3d 597, 604 (¶27) (Miss. 2012)). Relevant to the present appeal, our caselaw provides that

> a breaking is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or raising a latch. To constitute burglary, a structure must generally be closed. Otherwise[,] the entry is merely a trespass, not a breaking and a burglary. Even if the door was unlocked or if only slight force was needed to gain entry, such entry has been viewed as forcible for the purposes of our burglary statute.

*McLain v. State*, 317 So. 3d 33, 35 (¶9) (Miss. Ct. App. 2021) (citations and internal

7

quotation marks omitted).

¶15. Here, the State was not required to prove that the door to Coggins's home was either fully secured or closed for the jury to convict Johnson of burglary of a dwelling. Rather, as our caselaw establishes, Coggins's home only needed to "generally be closed[,]" and even a slight act of force, such as a small "push to further open a door," would suffice for the element of "breaking." *Id.* (quoting *Foster v. State*, 281 So. 3d 229, 233 (¶11) (Miss. Ct. App. 2019)).

¶16. Coggins acknowledged that on the day of his arrest, he left his house key in the door to his residence. He specifically insisted, however, that he not only closed but also locked the door. In response to questioning that directly addressed the secured nature of his residence on the last day he was there, Coggins stated that his front door was closed and locked when he left. Similarly, in *McLain*, this Court affirmed a jury's verdict in a burglary case where sufficiency of the evidence as to the "breaking" element was primarily at issue. *Id.* at 36 (¶15). The *McLain* Court recognized "that evidence [a] door is usually shut was sufficient to prove the 'breaking' element" for burglary of a dwelling. *Id.* at (¶14). The *McLain* Court further found the victim's testimony "that he usually kept the door to his home closed" was sufficient to prove the defendant's entry into the home constituted a "breaking." *Id.*

¶17. In the present case, Coggins also testified that he had closed and locked the gate across his driveway and that the gate remained that way at all times. Despite taking these

8

steps to secure his property, though, Coggins noted that the investigators' photographs showed his lock for the gate was missing, the gate and front door to his home were wide open, his home was in disarray, and several items of personal property were missing.

¶18. Upon being questioned by Investigators Whetstone and Meaux, Johnson admitted that he had entered Coggins's residence and taken cash from inside the home without any intention of delivering the money to Coggins, who was still incarcerated. Contrary to the State's evidence that Coggins's home and property were both well secured by a barbed-wire fence, locked gate, and locked front door, Johnson claimed that he thought the gate had been open when he arrived at the residence and that the front door was also open. "Under our long-established system of criminal justice, the jury is the finder of fact." *Benthall v. State*, 311 So. 3d 697, 704 (¶24) (Miss. Ct. App. 2021) (quoting *McDaniel v. State*, 290 So. 3d 1286, 1291 (¶17) (Miss. Ct. App. 2020)). As a result, "it is the jury's province to determine witness credibility and resolve conflicts in the evidence." *McLain*, 317 So. 3d at 36 (¶13); *Wayne v. State*, 337 So. 3d 704, 715 (¶39) (Miss. Ct. App. 2022) (quoting *Williams v. State*, 285 So. 3d 156, 160 (¶17) (Miss. 2019)). After hearing both Johnson's version of events and the testimony provided by the State's witnesses, the jury could reasonably find the State's witnesses more credible and resolve any evidentiary conflicts in the State's favor. In addition, the circuit court instructed the jury not only on the elements of burglary of a dwelling but also on the definition of a "breaking."

¶19. After viewing the evidence in the light most favorable to the State, we conclude the

record contains sufficient evidence for a rational juror to find that the State proved the "breaking" element of burglary of a dwelling beyond a reasonable doubt. We therefore affirm Johnson's conviction and sentence as to Count I for burglary of a dwelling.

## II.      Jury Instruction on Count II

¶20.    Without any objection from the defense, the circuit court gave jury instruction S-1, which provided the elements of the charges against Johnson. For the first time on appeal, Johnson argues that the portion of jury instruction S-1 regarding automobile theft omitted the value of Coggins's 2008 Chevrolet Silverado. Asserting that the omission of the vehicle's value constituted an essential element of the automobile-theft charge, Johnson asks this Court to reverse his conviction as to Count II.

¶21.    Relevant to Johnson's claim on appeal, the given jury instruction stated the following:

As to Count Two, if you find beyond a reasonable doubt from the evidence in this case that:

1.      Between October 1, 2019[,] and October 31, 2019, in Amite County;

2.      Earnest Johnson without authority intentionally and unlawfully took a motor vehicle, which was owned by Dennis Coggins, intending to permanently or temporarily deprive the owner Dennis Coggins from possessing the motor vehicle, then you shall find Earnest Johnson guilty as charged of [a]uto [t]heft.

If the State did not prove any one of the above listed elements beyond a reasonable doubt, then you shall find Earnest Johnson not guilty of Count Two.

¶22.    "A defendant must specifically object to the proposed instruction . . . to preserve the

10

issue on appeal. However, failure to instruct on the essential elements of the crime is plain error." *McCool v. State*, 328 So. 3d 173, 189 (¶78) (Miss. Ct. App. 2021) (citing *Fitzpatrick v. State*, 175 So. 3d 515, 522 (¶31) (Miss. 2015)). "[P]lain error exists 'only where a fundamental right of the defendant has been violated.'" *Id.* at 190 (¶79) (quoting *Fitzpatrick*, 175 So. 3d at 522 (¶31)). To determine if plain error has occurred, we consider the following: "(1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial. Only if the error resulted in a manifest miscarriage of justice will reversal occur." *Collins v. State*, 305 So. 3d 1262, 1267 (¶19) (Miss. Ct. App. 2020) (quoting *Willie v. State*, 204 So. 3d 1268, 1279 (¶29) (Miss. 2016)).

¶23. Count II of the indictment charged Johnson with automobile theft under Mississippi Code Annotated section 97-17-42(1) (Rev. 2020). In 2014, the Mississippi Legislature amended section 97-17-42 "to base punishment [for automobile theft] on the value of the vehicle, by reference to the grand larceny and petit larceny statutes, sections 97-17-41 and -43 [(Rev. 2020)], respectively." *Shell-Blackwell v. State*, 305 So. 3d 1211, 1227 (¶55) (Miss. Ct. App. 2020). Prior to the 2014 amendment, section 97-17-42 "made no reference to the value of the vehicle and provided a sentence of not more than five years." *Id.* (citing Miss. Code Ann. § 97-17-42(1) (Supp. 2013)).

¶24. In *Shell-Blackwell*, this Court addressed the defendant's argument that the failure to properly instruct the jury on the value element of automobile theft constituted reversible

11

error. *Id.* at (¶53). As we explained in *Shell-Blackwell*, "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id.* at 1228 (¶58) (quoting *Fogleman v. State*, 283 So. 3d 685, 689 (¶13) (Miss. 2019)). Because the 2014 amendment to section 97-17-42 made the vehicle's value an essential element of automobile theft—and a factual finding the jury must make for the statutory sentencing range to be determined—we reversed and remanded the defendant's automobile-theft conviction for a new trial. *Id.* at (¶59).

¶25. As in *Shell-Blackwell*, the circuit court here never properly instructed the jury as to the value of Coggins's 2008 Chevrolet Silverado. Based upon the foregoing, we find the omission of the value element from jury instruction S-1 constituted reversible error. We therefore must reverse Johnson's conviction and sentence as to Count II and remand for a new trial on the automobile-theft charge.

## CONCLUSION

¶26. Based on our review of the record and relevant caselaw, we affirm Johnson's conviction and sentence for burglary of a dwelling. As to his conviction for automobile theft, however, we reverse the conviction and sentence and remand for a new trial on Count II.

¶27. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**

12